*55 Vroom.*                    Clark v. Edgar.

---

BENJAMIN B. CLARK AND THOMAS THOMPSON, PLAINTIFFS IN ERROR, v. J. BLANCHARD EDGAR ET AL., DEFENDANTS IN ERROR.

Submitted June 28, 1912—Decided March 3, 1913.

1. Where a statute by its first section requires that all townships of a designated class be divided into wards, and by its second section provides for the government of townships so divided into wards, fixing the number of committeemen to be elected in each ward, without which the division into wards would be nugatory, and the legislature subsequently repeals the second section and enacts in its stead one limiting the application of the section to a class different from that named in the first, such subsequent legislation, being the latest expression of the legislative will, is, so far as it is inconsistent with the first section, paramount to it.

2. Where the legislature provides a scheme for dividing a township into wards and confers powers necessary to make the scheme perfect, and then by subsequent legislation limits the powers so given to such townships as may contain a population greater than that prescribed in the general enacting clause, leaving to those described in that clause only the right to be divided into wards, without power to carry out the purposes intended to effectuate such division, such right becomes nugatory to the class thus deprived of a necessary part of the legislative scheme, and they cannot evoke the aid of the act for the simple purpose of being divided into wards, without having the additional power to complete the legislative will.

---

On error to the Supreme Court.

For the plaintiffs in error, *Ephraim Cutler.*

For the defendants in error, *Guild & Martin.*

The opinion of the court was delivered by

BERGEN, J.  The legality of the proceedings challenged by this writ of error are based upon a statute approved April 30th, 1906.  *Comp. Stat., p.* 5574.  The first section of this act declares that all townships having a population of more than eight thousand shall be divided into not less than three wards.  The second section enacts that the township committee of any township having a population of more than eight thousand shall have two members from each ward, who shall hold office for the term of two years, and one member-at-large, who shall hold office for the term of one year, and the majority of the members of this committee shall constitute a quorum for the transaction of business; and that no ordinance or resolution should be adopted except by a vote of a majority of the members thereof.

The act further provided that the division into wards should be made by a board of three commissioners to be appointed by the judge of the Circuit Court of the county in which the township is located, upon petition in writing by at least fifty of the legal voters of the township, and until such application be made, then the committeemen should be elected in the manner required by law when the act was passed.

Section 2 was amended in 1908 (*Pamph. L., p.* 612) by providing that the member-at-large should be chairman of the township committee, so that under the act, as amended in 1908, every township containing a population of more than eight thousand shall be divided into not less than three wards by commissioners to be appointed by the judge of the Circuit Court of the county in which the township is located, upon the application of fifty legal voters, which wards should each have two members of the township committee, to consist of such members, and of a member to be elected at large, and when so constituted they are given the right to exercise certain legislative powers.

On July 6th, 1911, a petition was presented to the justice of the Supreme Court presiding in the Circuit Court of the county of Middlesex, within which the township of Woodbridge is located, in behalf of such township, for the appointment of commissioners to divide the township into wards. This petition was signed by fifty of the legal voters of the township, and thereupon an order was made appointing the commissioners, who subsequently divided the township into three wards and made their report, whereupon a *certiorari* was allowed bringing before the Supreme Court the order appointing the commissioners and all proceedings thereunder, and the Supreme Court having affirmed the proceedings, the prosecutors by writ of error removed that judgment to this court for review.

The order appointing the commissioners, being made on the 6th day of July, 1911, is subject to a statute approved April 27th, 1911 (*Pamph. L., p.* 540), which amends section 2 of the statute of 1906 in several material respects, and repeals all inconsistent acts, and as amended it is only applicable to townships "having a population of more than ten thousand inhabitants," and then only when it shall be accepted by resolution of the township committee, and also by a majority vote of the township at an election to be held to determine its acceptance or rejection by the voters of the township. It is not claimed that the township of Woodbridge has a population of more than ten thousand inhabitants, or that the act as amended was ever accepted by the township committee, or the question of acceptance submitted to a vote of the electors. As the amendment of section 2 makes it inconsistent with the original section, it supersedes it and the act must be read as if the present section 2 had been originally incorporated therein, in applying it to proceedings thereafter instituted. The result is an act, the first section of which requires that all townships having a population of over eight thousand shall be divided into not less than three wards, without any provision for the election of a township committee by wards where the population is under ten thousand.

As the manifest intent of the act is not only to divide townships of the class named into wards, but to provide a change in the form of government and the method of selecting officers therein, it is quite apparent that, when by the amendment the change in the form of government and the method of selecting officers by wards was limited to a class which does not embrace the township of Woodbridge, the completed act is not applicable to it, and it cannot avail itself of its provision, for the amendment being the latest expression of the legislative will, it becomes paramount and supersedes the earlier legislation.

The first and second sections of the act are so inconsistent that it is impossible to harmonize them, and the latest expression of the legislative will being, that the perfected scheme contemplated by the act shall be limited to townships having a population of over ten thousand inhabitants, that expression must control and establish the class which is endowed with the necessary powers provided for by the act, and without these powers the legislative scheme contemplated by the statute as originally adopted failed, and became nugatory as to townships having a population of less than ten thousand.

The Supreme Court sustained these proceedings upon the theory that the act of 1906 was not affected by the amendment of 1911 because the latter by its terms remains inoperative until its acceptance by a popular vote, and as no such vote had been had in the township of Woodbridge, the second section as contained in the act of 1906 was not, and could not be, superseded by the amendment of 1911 until the latter act had been adopted. This we do not deem sound, for the reason that the amendment of 1911 is made, by its terms, a distinctive legislative substitute for the original section, the language being, "the same is hereby amended so as to read as follows." And as the new statute is clearly inconsistent with the section as it stood before the amendment, it was repealed by the third paragraph of the amendatory act, which declared that "all acts or parts of acts, general or special, inconsistent herewith, are hereby repealed."

Where the legislature provides a scheme for dividing a township into wards, and confers powers necessary to make the scheme perfect, and then by subsequent legislation limits the powers so given to such townships as may contain a population greater than that prescribed in the general enacting clause, leaving to those described in that clause only the right to be divided into wards, without the power to carry out the purposes intended to effectuate such division, such right becomes nugatory to the class thus deprived of a necessary part of the legislative scheme, and they cannot evoke the aid of the act for the simple purpose of being divided into wards without having the additional power to complete the legislative will.

To what extent this amendment may affect townships having a population of over ten thousand, we are not called upon to express an opinion, and therefore that question is not considered or passed upon, but in our opinion the act as amended will not support these proceedings which relate entirely to a township having a population of less than ten thousand inhabitants, and as the statute as it now stands furnishes no basis for the proceedings under review, they must be set aside, for want of statutory authority.

The prosecutor also argues that the act delegates legislative powers, and therefore is not consistent with the constitution of the state. The principal grounds upon which this proposition is rested are—*first,* that the first section of the act does not fix the number of wards into which a township shall be divided, for while fixing the minimum at not less than three, there is no limitation as to the maximum, thus leaving to the commissioners to be appointed the power of determining the number of wards into which any given township must be divided; *second,* that the commissioners may be appointed by the judge upon the application in writing of fifty freeholders, even if every other voter in the township was opposed to the proceeding, and that while it may be, perhaps, lawful to provide that proceedings may be set in motion by such an application to ascertain the wishes of a majority of the voters, the power to make a statute applicable to a given

338     COURT OF ERRORS AND APPEALS.

Granger v. Penna. Railroad Co.     *84 N. J. L.*

locality by the favorable expression of so small a minority of the voting population, is the delegation of a legislative power to a minority, rather than to a majority of the legal voters, and is therefore contrary to the organic law.

These propositions raise an interesting and perhaps important question, but as this cause has been disposed of upon another ground, it is not necessary to now determine it, and reference is made to the subject for the sole purpose of preventing an inference that the result which we have reached is based upon the consideration or determination of the question thus raised, although it was argued on the hearing of the cause.

The proceedings should be set aside, and for that reason the judgment below should be reversed.

*For affirmance*—None. .

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, TREACY, JJ.   11